```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/7/10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGE DAVIS,

                Petitioner,

   - against -

ADA PEREZ,

                Respondent.

REPORT AND **MEMO ENDORSED**
RECOMMENDATION

10 Civ. 3444 (CM) (RLE)

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/18/11
```

To the HONORABLE COLLEEN MCMAHON, U.S.D.J.:

## I. INTRODUCTION

*Pro Se* Petitioner George Davis ("Davis"), a former New York state prisoner at Downstate Correctional Facility now under post-release supervision, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His Petition was received by the *Pro Se* Office in this District on March 19, 2010. Davis was convicted of one count of criminal sale of a controlled substance in the third degree (N.Y. Penal Law § 220.39(1)), and sentenced to a determinate term of four and one-half years' imprisonment with two years' post-release supervision.

Davis contends that his incarceration violates the United States Constitution in that: 1) the trial court improperly refused to submit the charge of seventh-degree drug possession as a lesser included offense of third-degree drug sale, where Davis had properly asserted an agency defense under New York law; and 2) the trial court improperly refused to read back certain testimony when requested by the jury. (Pet. ¶ 16.) For the reasons set forth below, I recommend that the Petition be **DENIED**.

1/18/2011 Objections were due on 12/27/2010. No objections have been received. The Court has reviewed the report and adopts it as its opinion. The petition is DENIED. As petitioner has made no substantial showing of the denial of a constitutional right, no certificate of appealability shall issue. I certify that any appeal from this order would not be taken in good faith. 28 USC §1915(a)

Colleen McMahon USDJ

## II. BACKGROUND

### A. Factual Background

#### 1. The Crime

a. The Government's Version of Events

On March 13, 2005, a team of New York Police Department ("NYPD") officers, including two undercover officers, set out on a "buy and bust" operation in the vicinity of 149th Street and Amsterdam Avenue in Manhattan. (Tr. at 25-27.) The primary undercover officer approached 545 West 149th Street with a second undercover officer ("the ghost") watching from across the street. (Tr. at 29-30.) Davis was sitting outside of the building. (Tr. at 30.) The primary undercover and Davis had a "narcotics related conversation," where Davis asked what the undercover was looking for and the undercover replied that he wanted two grams of crack cocaine. (Tr. at 64-65.) Davis replied that he could get the drugs with no problem, and told the undercover that it would cost $60. (Tr. at 65.) The undercover gave Davis $60, and Davis went into the house and came back with two black ziploc bags of crack cocaine. (*Id.*) After the exchange, the primary undercover gave the ghost a hand sign indicating that a drug deal had taken place. (Tr. at 33.) The ghost alerted the rest of the team, (*id.*), and followed Davis down Amsterdam Avenue to 140th Street, where he was intercepted by the apprehending officers. (Tr. at 34.)

b. Davis's Version of Events

Davis was sitting at a donut shop on 145th Street and Amsterdam Avenue eating some chicken and french fries, when a man knocked on the door and gestured for him to come outside. (Tr. at 126.) The man told Davis that he was trying to buy crack on 149th Street, but that the dealers there would not sell to him because he was white. (*Id.*) The man told Davis that if Davis

2

helped him, he would "look out for [Davis]," which Davis took to indicate that the man would give him some money or drugs for his help. (Tr. at 130.) Davis agreed to help, and walked with the man to 149th Street, stopping along the way to help the man purchase a crack pipe. (Tr. at 126-27.) When they reached "the drug spot," the man gave Davis $40, and Davis approached the building, knocked on the door, and purchased two bags of crack cocaine from the person who answered, which he gave to the man. (Tr. at 129.) The man started to walk away. (Tr. at 130.) Davis asked where he was going, but chose not to press the issue when the man persisted in leaving. (*Id.*) He started to walk back down Amsterdam Avenue and a van pulled up to arrest him. (Tr. at 129.)

### 2. The Trial

At trial, the prosecution presented the testimony of the two undercover officers (Tr. at 18-54, 55-84), the lab chemist who verified that the substance sold was cocaine (Tr. at 84-101), and the arresting officer. (Tr. at 101-18.) Davis testified on his own behalf. (Tr. at 124-31; Continued Tr. at 14-36.) Because Davis's testimony laid the foundation for an agency defense under New York law, the prosecution was allowed to cross-examine him on two prior convictions, one for criminal sale of a controlled substance and one for criminal possession of a controlled substance with intent to sell. (Continued Tr. at 7.) After the close of testimony, the trial judge told the parties that he would be giving an agency charge, instructing the jury that it would be a defense to the charge of sale if they found that Davis had acted as an agent of the buyer. (Continued Tr. at 38.) Davis's attorney requested that the court also include a charge of possession, arguing that if the jury believed the agency defense, they might find that Davis possessed the drugs but did not sell them. (Continued Tr. at 38-39.) The court found that a possession charge was not appropriate because possession is not a lesser included offense of sale

under New York law. (Continued Tr. at 47-48.) The jury instructions consequently included a charge of criminal sale of a controlled substance in the third degree, as well as an instruction on the agency defense. (Continued Tr. at 129-34.) After several hours of deliberations, the jury sent the judge a note asking to hear the portion of the trial where Davis's attorney cross-examined the primary undercover regarding the donut shop where Davis claimed to be eating when the undercover approached him. (Continued Tr. at 149.) The jurors were called back into court and the transcript was read back to them. (Continued Tr. at 150.) After further deliberations, the jury returned a guilty verdict on the sale charge. (Continued Tr. at 171.) At sentencing, the prosecution recommended that, in light of Davis's prior felonies, he be sentenced to five years' imprisonment. (Sentencing Tr. at 5.) The defense asked for the minimum sentence of three and one-half years. (Sentencing Tr. at 6.) The judge chose to sentence Davis to four and one-half years' imprisonment and two years of post-release supervision. (Sentencing Tr. at 7.)

### 3. Procedural Background

Davis appealed his conviction to the Appellate Division, First Department, arguing that 1) his conviction was against the weight of the evidence; 2) the trial court committed reversible error by refusing to instruct the jury that it could find Davis guilty of the lesser included offense of possession, when he had asserted an agency defense; and 3) the trial court failed to take into account a number of factors when arriving at Davis's sentence. (Pet. ¶ 18.) On September 9, 2008, the Appellate Division affirmed Davis's conviction and upheld his sentence. *People v. Davis*, 54 A.D.3d 575 (App. Div. 2008). In deciding against Davis on his claim regarding the possession charge, the Appellate Division relied on *People v. Glover*, 57 N.Y.2d 61, 63 (1982), which held that a charge of a lesser included offense is available if the defendant can show "that in all circumstances . . . it is impossible to commit the greater crime without concomitantly, by

the same conduct, committing the lesser offense," and *People v. Cogle*, 94 A.D.2d 158 (App. Div.1983), which applied *Glover* to find that possession offenses are not lesser included offenses of crimes prohibiting the sale of controlled substances.

On January 22, 2009, Davis was granted leave to appeal to the New York Court of Appeals. (Decl. in Opp'n to Pet., Ex. K, July 12, 2010.) On November 24, 2009, the Court of Appeals affirmed the ruling of the lower courts, reaffirming its holding that possession of a controlled substance is not a lesser included offense of sale of a controlled substance, even when an agency defense is charged. *People v. Davis*, 4 N.Y.3d 20, 21 (2009). Davis has filed no other proceedings challenging his conviction and sentence.

### III. DISCUSSION

#### A. Threshold Issues

##### 1. Timeliness

A petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final. *See* 28 U.S.C. § 2244(d)(1). A conviction becomes final "'when [the] time to seek direct review in the United States Supreme Court by writ of certiorari expire[s],'" that is, ninety days after the final determination by the state court. *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) (quoting *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998)). The statute of limitations is tolled while state court relief is pending. 28 U.S.C. § 2244(d)(2); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). The tolling period runs from when the post-conviction motion is filed until leave to appeal is denied. *See Rodriguez v. Portuondo*, 2003 WL 22966293 at *1-2 (S.D.N.Y. Dec. 15, 2003); *see also Carey v. Saffold*, 536 U.S. 214, 216 (2002); *Bennett v. Artuz*, 199 F.3d 116, 119 (2d Cir. 1999.) Davis's conviction became final on February 22, 2010, ninety days after his conviction was affirmed by the Court of Appeals. His Petition was received

by the *Pro Se* Office on March 19, 2010, and is therefore timely.

## 2. Exhaustion

Pursuant to 28 U.S.C. § 2254(b), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), courts may not grant a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. *See* 28 § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997). In order to satisfy substantive exhaustion, a petitioner's claim before the state courts must have been federal or constitutional in nature. Although not an exacting standard, a petitioner must inform state courts of "both the factual and legal premises of the claim [he] asserts in federal court." *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (quoting *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*)).

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye*, 696 F.2d at 194. Procedurally, the petitioner must utilize all avenues of appellate review within the state court system before proceeding to federal court. *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994). He must raise each federal claim at each level of the state court system, "present[ing] the substance of his federal claims 'to the highest court of the pertinent state.'" *Id.* (quoting *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990)). Even where a respondent does not challenge petitioner's claims on exhaustion grounds, the court has an independent obligation to ensure that this requirement has been met, unless expressly waived by the State. *See* 28 U.S.C. § 2254(b)(3).

Neither of Davis's claims is exhausted. His claim regarding the failure to read back the jury charge is procedurally unexhausted, as he did not raise it before the Appellate Division or the Court of Appeals. (*See generally* Decl. in Opp'n to Pet., Ex. A; Decl. in Opp'n to Pet., Ex. L.) His claim that possession of a controlled substance should have been charged as a lesser included offense is substantively unexhausted. Nowhere in his appeals did Davis indicate that this claim had a federal dimension. (*See generally* Decl. in Opp'n to Pet., Ex. A; Decl. in Opp'n to Pet., Ex. L.) He cited only state law cases in support of his claim, made no reference to constitutional principles, and did not cite any state cases that relied on a constitutional analysis. (*See* Decl. in Opp'n to Pet., Ex. A 27-34; Decl. in Opp'n to Pet., Ex. L 7-13.) As both of his claims are unexhausted, Davis's Petition should be **DENIED**.

## B. Merits of Claims

### 1. Standard of Review

AEDPA constrains a federal habeas court's ability to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. The Act limits issuance of the writ to circumstances in which the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. Furthermore, in cases where the state court decision rests on a factual determination, the federal court must find that the

"decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

### 2. Claim 1: Davis's Claim that the Trial Court Should Have Included Possession as a Lesser Included Offense in its Charge to the Jury

Even if Davis's claim regarding the inclusion of a possession charge were not exhausted, it would still fail. The Supreme Court has never held that due process requires a lesser included offense instruction in non-capital cases. *Beck v. Alabama*, 447 U.S. 625, 637 (1980); *see also Gilmore v. Taylor*, 508 U.S. 333, 361 (1993) (Blackmun, J., dissenting). As a result, the Court of Appeals's decision that the proposed lesser included offense instruction was not required in this case cannot be contrary to or involve an unreasonable application of federal law. "[A] decision interpreting the Constitution to require the submission of instructions on lesser-included offenses in non-capital cases would involve the announcement of a new rule," which is prohibited on habeas review by *Teague v. Lane*, 489 U.S. 288 (1989). *Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996). Davis's claim related to this issue should be **DENIED**.

### 3. Claim 2: Davis's Claim Regarding Failure to Read Back Testimony to the Jury

Davis's second claim is that his conviction was improper because the trial court refused to read back testimony of Undercover 1133, the ghost, regarding the donut shop where Davis claimed to have been eating on the day of the event. (Pet. ¶ 16.) This claim is meritless because it is not supported by the record. The trial transcript shows that the jury requested a read back of the testimony of Undercover 639, the primary undercover, regarding the donut shop (Continued Tr. at 149), and that this request was granted. (Continued Tr. at 153.) At no point did the jury request a read back of testimony from the ghost related to the donut shop (*see* Continued Tr. at

8

142-71), and they could not have done so because the ghost did not testify about the donut shop. (*See* Continued Tr. at 17-54.) As a result, Davis's claim regarding this issue should be **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, I recommend that Davis's Petition for a Writ of Habeas Corpus be **DENIED**. Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Colleen McMahon, 500 Pearl Street, Room 1350, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) West Supp. 1995); FED. R. CIV. P. 72, 6(a), 6(d).

Dated: December 7, 2010
New York, New York

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge

Copies of this Report and Recommendation were sent to:

Pro Se Petitioner
George Davis
172 Covert Street
Brooklyn, NY 11217

Counsel for Respondent
Lisa Fleischmann
Office of the Attorney General
120 Broadway
New York, NY 10271